NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0140n.06
Filed: February 20, 2007

No. 06-3688

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KENA PROPERTIES, LLC, LESLIE FOSTER, and JAMES FOSTER, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiffs-Appellants, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| MERCHANTS BANK & TRUST, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

BEFORE: GUY, SUHRHEINRICH, and GRIFFIN, Circuit Judges.

PER CURIAM.

Plaintiffs Kena Properties, LLC ("Kena"), Leslie Foster, and James Foster appeal the district

court's order of summary judgment in favor of defendant Merchants Bank & Trust ("Merchants")

on their claims of breach of contract and promissory estoppel. Plaintiffs argue that the district court

erred in concluding that no genuine issue of material fact existed with regard to Merchants'

cancellation of two commitment letters that it sent to Kena concerning the refinancing of properties

owned by Kena and the Fosters. Plaintiffs assert further that the district court erred in granting

Merchants' motion for summary judgment on plaintiffs' claim of promissory estoppel with respect

to Merchants' decision to withdraw an alleged oral commitment to assist in the financing of a real

estate venture known as the Alpine Terrace project.  For the reasons set forth below, we affirm the district court's entry of summary judgment in favor of defendant Merchants.

I.

Kena is a limited liability company owned by plaintiffs Leslie and James Foster.  In 2003, Leslie Foster and Merchants engaged in negotiations to refinance and renovate properties owned by Kena.  The negotiations resulted in Merchants issuing two commitment letters to plaintiffs.  The first letter, issued July 14, 2003, concerned the refinancing of seven investment properties located in Cincinnati, Ohio.  The second letter, issued August 25, 2003, approved plaintiffs' request for a $250,000 revolving line of credit to renovate the Fosters' home in Lexington, Kentucky.  Each letter contained the following statement:  "This commitment may be deemed null and void if there are any material adverse conditions with respect to the Borrower that occur before the closing."

After Merchants issued these letters to plaintiffs, Leslie Foster discussed with Merchants the financing of a condominium development known as Alpine Terrace.  Plaintiffs allege that Foster received a phone call from Merchants' Assistant Vice President Diana Barhorst during which Barhorst told Foster that Merchants would supply financing for the Alpine Terrace project.  Plaintiffs claim that, in reliance on Merchants' alleged oral commitment to finance the Alpine Terrace project, Leslie Foster entered into a $110,000 contract to develop the project.  The contract was signed on September 22, 2003.

On or about September 12, 2003, Merchants learned of a lawsuit that had been filed in the United States District Court for the Southern District of Ohio, *Fletcher v. Minger et al.*, No. 03-616,

in which Kena was named as a defendant. The *Fletcher* plaintiffs alleged that numerous defendants, including Kena, engaged in a complex mortgage fraud to sell overpriced homes to uneducated buyers, a practice commonly referred to as "flipping." The complaint asserted specifically that Kena acted as a "property speculator," where it "masqueraded as [a] legitimate property owner[]" and "acquired depressed real estate and arranged to sell the properties at vastly inflated prices to innocent buyers . . . ."

In response to the *Fletcher* complaint, Merchants' President Don Patterson called Leslie Foster to discuss the lawsuit. After initially agreeing to come in to discuss the lawsuit with Patterson, Foster later changed her mind. Instead, Foster, her attorney William Sulau, Patterson, and Merchants' attorney Arthur Weber engaged in a conference call on September 15, 2003, during which Weber informed Foster and Sulau that Merchants would "not be moving forward on anything with Kena Properties until [the Fletcher case] is resolved." After further negotiations between plaintiffs and Merchants failed, Merchants announced that it had withdrawn its offer to finance Kena's properties.

Plaintiffs filed a complaint on August 27, 2004, in the Hamilton County Court of Common Pleas, asserting claims of breach of contract and promissory estoppel against Merchants. Merchants timely removed this case to federal court on September 29, 2004. On March 1, 2006, Merchants moved for summary judgment. The district court granted Merchants' motion on April 24, 2006. This timely appeal followed.

II.

We review de novo the district court's entry of summary judgment in favor of Merchants. *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 660 (6th Cir. 2005); *see also Parrett v. American Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (noting that under Ohio law, "[t]he question of whether the language of a written agreement is ambiguous is one of law"). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[T]o the extent that there is disagreement about the facts . . . we must review the evidence in the light most favorable to the Plaintiffs, taking all inferences in their favor." *Champion v. Outlook Nashville*, 380 F.3d 893, 900 (6th Cir. 2004), *cert. denied sub nom. Dickhaus v. Champion*, 544 U.S. 975 (2005).

With regard to their breach of contract claim against Merchants, plaintiffs first argue that the district court erred in concluding that the commitment letters' "any material adverse conditions" clause was satisfied by the *Fletcher* complaint filed against Kena. The district court reasoned as follows:

> The phrase "material adverse condition" is unambiguous. It means a meaningful or significant, negative or disadvantageous situation. In the context in which the phrase is used in the agreements in question, it means a significant disadvantageous situation arising in the life or existence of a borrower under the agreement. The parties may squabble over the degree of significance of the real estate flipping lawsuit, but Plaintiffs cannot seriously argue that the lawsuit was immaterial, given the virtual certainty that it would affect the financial position of Kena Properties, if only as a result of the expenditure of legal fees. The parties may also squabble over the degree of adverseness of the lawsuit, but Plaintiffs cannot seriously deny that its filing was an adverse condition. The Court can conceive of no interpretation of the phrase

"material adverse condition" that would not encompass the filing of the lawsuit naming Kena Properties as a defendant after the agreements in question were executed. Because the agreements include the word "any" before "material adverse condition," Defendant was permitted to nullify the agreements whenever a material adverse condition of any sort arose. Its doing so did not amount to a breach of the agreements embodied in the commitment letters.

We agree with the district court, and affirm its order of summary judgment with respect to plaintiffs' breach of contract claim against Merchants.

Plaintiffs contend that, because the term "material adverse condition" is not defined in the commitment letters, the phrase is ambiguous and a genuine issue of material fact exists as to its meaning. We disagree. Under Ohio law, "[t]he fact that the parties fail to specifically define a term within the contract does not make the term ambiguous." *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d 910, 915 (Ohio 2004) (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,* 652 N.E.2d 684, 686 (Ohio 1995)). Rather, "common, undefined words appearing in a written instrument 'will be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *Id.* (quoting *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978)). We agree with the district court that the phrase "material adverse condition" is unambiguous and that the phrase means, in this context, "a significant disadvantageous situation arising in the life or existence of a borrower under the agreement."

Plaintiffs next contend that a genuine issue of material fact exists as to whether the *Fletcher* lawsuit constitutes a "material adverse condition" because Merchants failed to investigate the merits of the lawsuit's claims against Kena. This argument also fails. Neither commitment letter provides

that Merchants owes a duty to investigate claims brought against Kena, and plaintiffs do not cite to any case – Ohio or otherwise – which suggests that a lender owes a borrower such a duty. Moreover, as the district court's order suggests, the Fletcher lawsuit imposed a substantial burden on plaintiffs, regardless of the lawsuit's merits. Thus, whether the Fletcher lawsuit constituted a "material adverse condition" did not depend solely on the merits of the lawsuit.

Finally, plaintiffs argue that because the *Fletcher* lawsuit named Kena as a defendant – and not James and Leslie Foster – there were no material adverse conditions against the Fosters. We disagree for two reasons. First, although plaintiffs argue that the revolving credit line commitment was made for the Fosters' personal use, Kena – rather than the Fosters – is identified as the borrower on that loan in a July 14, 2003, letter from Merchants to plaintiffs. Second, the Fosters were guarantors of the loan and the sole members of Kena. Any material adverse condition that would affect Kena would likewise affect the Fosters. For these reasons, and the reasons stated by the district court, we affirm the order granting summary judgment against plaintiffs with respect to their breach of contract claim against Merchants.

### III.

Plaintiffs next argue that the doctrine of promissory estoppel precluded Merchants from withdrawing its alleged oral agreement to finance the Alpine Terrace project. Plaintiffs rely on the following deposition testimony by Leslie Foster regarding an alleged oral promise made by Barhorst to provide financing for the Alpine Terrace project:

Q:    As I understand from your testimony, please correct me if I'm wrong, Ms. Barhorst indicated to you after you had this long discussion with her that she had to run it by people at the bank?

A:    Correct.

Q:    How long was it before she got back to you?

A:    Less than 24 hours.

Q:    And again, what did she indicate to you when she got back to you?

A:    Her exact comment was, hi, Leslie, this is Diana. I've got great news. The bank is going to fund this project for you. I said, great. She said, this is what I need.

       That's when she asked me for the information on Temple to use as my collateral and when she asked me for the information from Jerry Tepe at Neyer. And that was on that Friday.

Q:    And the Temple property is owned by Kena?

A:    Kena Properties, correct.

Q:    Was there any discussion of a written commitment letter or anything of that type?

A:    Yes. She said she would be forwarding something to me in writing.

In its April 24 order, the district court properly identified four elements that must be met for a promissory estoppel claim to succeed in Ohio: (1) a clear and unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the party seeking to enforce the agreement is injured as a result of its reliance. *Weiper v. W.A. Hill & Assocs.*, 661 N.E.2d 796, 803 (Ohio Ct. App. 1995); *see also Stonecreek Props. v. Ravenna Sav. Bank*, 2004 WL 1559725, at *7 (Ohio Ct. App. July 9, 2004) (unpublished)

(same). With regard to the merits of plaintiffs' promissory estoppel claim, the district court reasoned:

> The parties agree that Defendant did not provide funding for the Alpine Terrace Project. Plaintiff Leslie Foster represents that Diana Barhorst told her that Defendant would provide financing for the Alpine Terrace Project in a telephone conversation during which she also told Ms. Foster that Defendant would need documentation concerning the property to be used as collateral and that a written commitment would follow. Plaintiffs have offered some evidence of detrimental reliance upon the statement. Under those circumstances, the Court is persuaded, as a matter of law, that to the extent that Ms. Barhorst's statement was clear and unambiguous it indicated that Defendant intended to provide financing but that it would formally commit to doing so after receiving information from Kena Properties or Ms. Foster. The statement did not clearly and unambiguously indicate that Defendant would provide such financing regardless of Plaintiffs' ability to document the sufficiency of the collateral. The statement was either ambiguous and, thus, not a basis for a promissory estoppel claim or unambiguous in a manner that would not permit a showing of justifiable reliance by Plaintiffs. Accordingly, the first element of the promissory estoppel claim is not satisfied.
>
> The Court is equally persuaded that Plaintiffs cannot satisfy the third element. The promise to provide financing was implicitly conditioned upon the receipt of, and Defendant's satisfaction with, information from Plaintiffs. Not having received written confirmation after having provided that information, Plaintiffs' actions in reliance upon Ms. Barhorst's oral statement were not, as a matter of law, reasonable or foreseeable. Accordingly, Defendant is entitled to summary judgment with respect to Plaintiffs' promissory estoppel claim.

Plaintiffs first contend that, because their argument is based on the doctrine of promissory estoppel, the statute of frauds is inapplicable and does not bar their claim. Plaintiffs' argument is misplaced, however, as the district court did not rely on the statute of frauds to bar plaintiffs' promissory estoppel claim regarding the Alpine Terrace project. Rather, the district court held that Ohio's statute of frauds, OHIO REV. CODE § 1335.02, bars any breach of contract claim concerning Barhorst's alleged oral promise to finance the Alpine Terrace project.

Plaintiffs next argue that the district court erred in granting Merchants' motion for summary judgment with respect to plaintiffs' promissory estoppel claim because they offered evidence that Leslie Foster relied on Barhorst's alleged promise in entering into a written contract with Neyer Properties for $110,000 to develop the Alpine Terrace project. The district court held that plaintiffs could not satisfy the elements of promissory estoppel because Barhorst's alleged statement was ambiguous and because Foster's reliance was unreasonable. We agree with the district court.

Foster's reliance on Barhorst's alleged oral promise was unreasonable. First, Barhorst informed Foster that she would need information concerning the property to be used as collateral and that a written commitment letter would later be issued before the financing could be completed. Because Foster had already applied for – and received – financing commitments from Merchants for two other loans, it was unreasonable for Foster to expect that Merchants' alleged commitment to finance the Alpine Terrace project would be binding, regardless of its approval of Foster's proposed collateral.

Moreover, Foster acted unreasonably in signing a contract with Neyer Properties for $110,000 in reliance on Barhorst's alleged oral promise. During the September 15 conference call with Patterson and Merchants' attorney, Foster was told that Merchants would "not be moving forward on anything with Kena Properties until [the *Fletcher* case] is resolved." Nonetheless, on September 22, Foster signed the contract with Neyer to develop the Alpine Terrace project. Foster contends that, although Merchants' attorney Arthur Weber had informed her during the conference call that Merchants would not be providing any financing until the Fletcher case had been resolved,

Merchants allegedly agreed during that conference call to provide financing for the Alpine Terrace project. Regardless of this claimed promise, Foster was put on notice that Merchants was concerned about the impact of the Fletcher lawsuit and that it was at least disinclined to provide plaintiffs financing until the case had been resolved. We conclude that Foster's decision to sign a contract with Neyer and assume further debt under such circumstances was unreasonable.

Because plaintiffs cannot show that they reasonably relied on the alleged oral promise by Barhorst to finance the Alpine Terrace project, they cannot establish a promissory estoppel claim. We therefore affirm the district court's entry of summary judgment in favor of Merchants with respect to plaintiffs' promissory estoppel claim.

IV.

For the reasons set forth above, we affirm the district court's entry of summary judgment in favor of Merchants.